KAPLAN FOX & KILSHEIMER LLP
Laurence D. King (SBN 206423)
Linda M. Fong (SBN 124232)
Matthew B. George (SBN 239322)
Mario M. Choi (SBN 243409)
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: 415-772-4700
Facsimile:  415-772-4707
lking@kaplanfox.com
lfong@kaplanfox.com
mgeorge@kaplanfox.com
mchoi@kaplanfox.com

*Counsel for Plaintiff JOHN DOE*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>AETNA INC.; AETNA HEALTH AND LIFE INSURANCE COMPANY; AETNA INSURANCE COMPANY OF CONNECTICUT; and AETNA HEALTH OF CALIFORNIA INC.,<br><br>                              Defendants. | Case No.  3:17-cv-05191<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

        Plaintiff John Doe ("Plaintiff") brings this Class Action Complaint, on behalf of himself and the proposed classes defined herein, and alleges as follows:

## I.      INTRODUCTION

        1.      Medical privacy is among the most important tenets of American healthcare. Patients must trust their physicians, insurers, and pharmacies to protect their medical information from the improper disclosure of their health conditions and courses of treatment.  Indeed, numerous state and federal laws explicitly require this.  And, these laws are particularly important when protecting individuals with particular medical conditions such as HIV or AIDS that can and do subject them to regular discrimination.

2.      Despite these legal and ethical requirements, in late July of 2017, Aetna recklessly disclosed the protected health information of approximately 12,000 patients taking HIV-related medications for treatment and prevention in a mass mailing (the "July 2017 Notice") that carelessly and clearly revealed the contents of the letter such that anyone who picked it up could see the name and address of who it was sent to, along with the fact that the person was taking "HIV Medications."  As a result of Aetna's conduct, the HIV status, sexual orientation, and other health information of recipients was unlawfully disclosed to anyone who came in contact with the letter, including patients' families.

3.      Accordingly, Plaintiff John Doe[1], whose July 2017 Notice was inadvertently received by shocked and disheartened family members, brings this putative class action alleging Aetna unlawfully disclosed its patients' medical information in violation of various state and federal laws.  Plaintiff seeks all available remedies at law and equity, including but not limited to damages and restitution, as well as declaratory and injunctive relief necessary to safeguard Aetna's patients' health information from future unauthorized disclosure.

## II.      JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction of Plaintiff's Fair Credit Reporting Act and Declaratory Relief claims pursuant to 28 U.S.C. § 1331.  This Court also has subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  This Court has personal jurisdiction over Aetna because at all relevant times it has conducted substantial business operations within this District and throughout the state of California.

5.      Venue is proper in this District under 28 U.S.C. § 1391 because Aetna does substantial business within this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

---

[1] Plaintiff is proceeding as "John Doe" so his medical information is not further compromised and to reduce the risk of housing, healthcare and employment discrimination traditionally experienced by those with or at high risk of contracting HIV and/or AIDS.  This is permissible under Ninth Circuit law.  *Does I thru XXIII v. Advanced Textile Corp.*, 214 F. 3d 1058 (9th Cir. 2000); *see also Doe v. Kaweah Delta Hospital*, No. 1:08-cv-0118-AWI-GSA (E.D. Cal. Aug. 15, 2016).  If Plaintiff cannot proceed as "John Doe" then his identity will need to be sealed.

6.     **Intradistrict Assignment**:  Pursuant to Local Rule 3-2, this matter is suitable for assignment to the San Francisco and Oakland Divisions because Plaintiff is a resident of San Francisco County.

### III.     PARTIES

7.     Plaintiff John Doe is a resident of San Francisco, California.

8.     Defendant Aetna Inc. is a Pennsylvania corporation with its principal place of business and headquarters at 151 Farmington Avenue in Hartford, Connecticut.

9.     Defendant Aetna Health and Life Insurance Company is a Connecticut corporation with its principal place of business and headquarters at 151 Farmington Avenue in Hartford, Connecticut.

10.     Defendant Aetna Insurance Company of Connecticut is a Connecticut corporation with its principal place of business and headquarters at 151 Farmington Avenue in Hartford, Connecticut.

11.     Defendant Aetna Health of California Inc. is a California corporation with its principal place of business at 2850 Shadelands Drive in Walnut Creek, California.

12.     Unless otherwise stated, all Defendants are collectively referred to herein as "Aetna" or "Defendants."  Plaintiff is informed and alleges that at all relevant times Aetna shared common management, officers, owners, and directors, and that they carried out a joint scheme, business plan, or policy, and that acts or omissions of each are attributable to the other.  Plaintiff is informed and alleges that at all relevant times Aetna did business in the state of California. Plaintiff is informed and alleges that each and every of the acts and omissions alleged herein were performed by, and/or attributable to, all Defendants, each acting as agents and/or employees, and/or under the direction and control of each of the other Defendants, and that said acts and failures to act were within the course and scope of said agency, employment and/or direction and control.

IV.     **FACTUAL BACKGROUND**

A.      **Aetna Provides Healthcare Related Services Nationwide**

13.     Originally founded in Hartford, Connecticut in 1853, Aetna is an American managed health care company that sells traditional, consumer directed health care and life insurance plans.  Through its network of affiliates and subsidiaries throughout the United States, Aetna offers a range of insurance products including medical, pharmaceutical, dental, behavioral health, long-term care and disability plans.  Aetna is a Fortune 100 company with over $60 billion in reported annual revenue.

14.     Aetna's health insurance plans cover an estimated 23 million Americans, including the proposed class in this lawsuit.  Aetna states that as a "health care leader, we believe that our corporate responsibility starts with helping people live healthier lives."  Aetna's Chairman, CEO and President Mark Bertolini claims that Aetna's "values carry through our thoughts and actions every day, inspire innovation in our products and services, and drive our commitment to excellence in all we do."  Aetna claims that its core value of "Caring" mandates that "[w]e listen and respect our customers and each other so we can act with insight, understanding and compassion."

B.      **Aetna Collects Sensitive Personal And Medical Information**

15.     As a direct provider of medical insurance and related services, Aetna collects and maintains possession, custody, and control of: (1) personally identifiable information ("PII"), including, without limitation, patients' names, dates of birth, Social Security numbers, and addresses; and (2) protected health information ("PHI"), which contains PII in addition to patients' demographic information, medical histories, prescription, diagnostic, and treatment information, test and laboratory results, insurance information, and other data collected in the normal course of providing and obtaining payment for medical services.

16.     When patients begin treatment with providers covered by Aetna plans they complete enrollment forms and other paperwork which require them to provide an extensive amount of PII and PHI.  Aetna continues to collect and maintain its patients' PII and PHI throughout the course of policyholders' treatment and afterwards.

17. Aetna tells consumers in "FAQs" on its website that it values health care privacy because: "If you don't believe your health information is protected, you may be less likely to visit or talk to your doctors and other health care experts about health issues because you are afraid of who else may learn about your conditions. This may place you at greater risk: Your doctor needs to know as much as possible about your health to give you the best possible care."

18. Aetna expressly promises consumers that, among other things, it will: (1) Put safeguards in place to protect your information; (2) Limit the use and disclosure of your information to the minimum needed to accomplish our goals; (3) Enter into agreements with our contractors and others to make sure they use and disclose your information properly and safeguard it appropriately; (4) Have procedures in place to limit who can see your information; and (5) Hold training programs for employees to learn how to protect your information.

**C.     Aetna Is Required By Law To Prohibit Disclosure Of Medical Information**

19. Aetna is obligated by a number of state and federal laws to protect its patients' PII and PHI. Under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and its accompanying regulations, health care providers like Aetna are required to maintain reasonable and appropriate administrative, technical, and physical safeguards for protecting PHI. Among other things, Aetna is required by HIPAA to:

> ➢ Ensure the confidentiality, integrity, and availability of all PHI it creates, receives, maintains or transmits;

> ➢ Identify and protect against reasonably anticipated threats to the security or integrity of the information;

> ➢ Protect against reasonably anticipated, impermissible uses or disclosures; and

> ➢ Ensure compliance by its workforce.[2]

20. HIPAA also requires health care providers like Aetna to preserve the integrity of PII and PHI so that it is not altered or destroyed in an unauthorized manner and that it is only available and accessible to authorized persons. One other key component of HIPAA is that it

---

[2] *See* http://www.hhs.gov/hipaa/for-professionals/security/laws-regulations/, last accessed August 31, 2017.

requires health care providers to implement administrative safeguards, including ongoing risk management analyses to evaluate potential or likely risks to patients' PHI.  In order to prevent the unauthorized disclosure of PHI, Aetna is also required to implement physical and technical safeguards as part of a comprehensive protocol that is overseen by a chief privacy officer.

21.     Aetna is also subject to federal laws protecting consumer data pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA"), the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTCA"), and the Gramm-Leach Bliley Act, 15 U.S.C. §§ 6801, *et seq.* ("GLBA").

22.     The FCRA requires any business that shares data for consumer credit reporting purposes to maintain reasonable procedures designed to limit the furnishing of data to the purposes listed in the statute.  15 U.S.C. § 1681e.  Under the FCRA, a "person that receives medical information shall not disclose such information to any other person, except as necessary to carry out the purpose for which the information was initially disclosed, or as otherwise permitted by statute, regulation, or order." 15 U.S.C. §§ 1681b(g)(4), 1681b(g)(3)(A).  As a health insurer, Aetna collects and shares PII and PHI for purposes of collecting payment, subjecting it to the FCRA's requirements to safeguard PII and PHI and limit unauthorized disclosures.

23.     Similarly, Aetna is covered by the mandates of the FTCA, which prohibits it from unfair and deceptive conduct affecting commerce, a law that has been enforced and interpreted to include a company's information privacy practices.  Aetna also maintains an obligation to "respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information" under the GLBA.

24.     The state of California, where Plaintiff resides and where Aetna has substantial operations, similarly maintains stringent legal requirements for companies that maintain PII and PHI. *See, e.g.*, Cal. Civ. Code §§ 56, *et seq.*  Among other things, California prohibits unauthorized disclosures of medical information and requires companies with medical information to maintain, preserve, dispose of and destroy medical information in a manner that preserves confidentiality.  Cal. Civ. Code § 56.101.  Other states that Aetna does business in have

1  similar, if not stricter requirements, for securing personal and medical information and privacy

2  breach notification, including Florida, Kentucky, Michigan, and Washington.  *See, e.g.*, Fla. Stat.

3  §§ 501.171, *et seq.*; Cal. Civ. Code §§ 1798.80, *et seq.*; Ky. Rev. Stat. Ann. §§ 50-7a02(a), *et*

4  *seq.*; Mich. Comp. Laws Ann. §§ 445.72(1), *et seq.*; Wash. Rev. Code §§ 19.255.010(1), *et seq.*;

5  Wash. Rev. Code §§ 70.02.045, *et seq.*

6       25.    California (as well as other states) also have enacted protections specifically for

7  HIV patients (and those at risk) in order to encourage testing and treatment.  California has series

8  of regulations and initiatives in order to "promote an aggressive community-based HIV infection

9  prevention program in all communities and areas where behaviors and prevalence indicate high

10  risk of HIV infection, and to encourage local programs to involve racial and ethnic minorities in a

11  leading role to plan the development, implementation, and evaluation of preventive education,

12  HIV testing, delivery of care, and research activities that are necessary to the formation of a

13  comprehensive, community-based, culturally sensitive HIV infection prevention strategy."  Cal.

14  Health & Safety Code § 120800(h).  California ensures its patient-friendly policies and practices

15  ensure confidentiality.  *Id.*

16       26.    Moreover, the disclosure of HIV status to a third-party without a written

17  authorization carries with it civil and criminal penalties starting at $2,500, as well as liability for

18  all actual damages, including for psychological harm.  Cal. Health & Safety Code § 120980.

19      **D.**    **Aetna Disclosed Medical Information For Patients Taking HIV Medications**

20       27.    In late July of 2017, Aetna sent a letter to 12,000 patients associated in its records

21  as recipients of medications used for treatment and prevention of HIV.  The July 2017 Notice,

22  which Aetna agreed to send through resolution of recent litigation over Aetna's policies for how

23  these patients could obtain their life-saving prescriptions, recklessly disclosed through a

24  transparent window on the front of the envelope Aetna's corporate logo along with the patient's

25  (1) name; (2) address; (3) unique "Claim #", and (4) enough text from the first paragraph to

26  clearly inform whomever came in contact with the letter that the recipient was receiving

27

28

correspondence from a health insurer about medical treatment pertaining to "filling prescriptions for HIV..."   A redacted example of the July 2017 Notice envelope is below[3]:



28.     Additionally, the envelope was not marked with any other designation indicating the information contained therein was "Confidential" or that it contained "Medical Information." It does not appear Aetna made any effort to ensure only the intended recipient would see the contents of the July 2017 Notice such as by certified mail or use of an opaque envelope.  Instead, anyone who came in contact with the July 2017 Notice, including letter carriers, postal service employees, persons who sort and distribute mail at group homes or offices, co-workers, roommates, significant others, and family members could view its contents sufficient to disclose protected PHI.

29.     The purpose and intent of Aetna's letter also indicates a lack of "bedside manner" in the way it communicates with patients being treated for (or trying to prevent) a life altering and potentially deadly illness.  First, the letter was mostly made for marketing purposes, informing patients of the various ways they could obtain their prescriptions, such as via a retail pharmacy, while not so subtly trying to push them into Aetna's in-house pharmacy affiliate—a move no doubt intended to increase Aetna's overall bottom line.  **Exhibit A**.  Second, the letter itself was

---

[3] http://www.npr.org/sections/thetwo-way/2017/08/25/546048615/aetna-mailer-accidentally-reveals-hiv-status-of-up-to-12-000-patients, last accessed August 31, 2017

only mailed due to recent litigation over a prior November 2014 mailing Aetna made after it tried

to only permit its subscribers to obtain their HIV related prescriptions through its affiliated mail

order service. *See Doe, et al., v. Aetna, Inc., et al*., No. 3:14-cv-02985-LAB-DHB (C.D. Cal.);

**Exhibit B**.  Plaintiffs in that case reached a settlement wherein Aetna agreed to forego the change

in policy after patient advocates rightfully pointed out that requiring patients to obtain their

prescriptions via mail implicated its own privacy issues, and alleged that the practice itself was

discriminatory against HIV patients.

30.     Moreover, it was an egregious error for Aetna to disclose in the letter that the

recipient was receiving "prescriptions for HIV" when many recipients of the letter were in fact

either (1) taking their prescriptions to prevent HIV;[4] or (2) for other off-label uses such as chronic

fatigue syndrome and hepatitis.[5]  Had Aetna wished to communicate about its direct to home

prescription retail options, it certainly could have done so in a more scrupulous and direct manner

to each patient regarding their individual needs rather than callously lumping 12,000 individuals

with various medical issues and health care needs into a haphazard group of patients with "HIV

Medications"—a term Aetna stated no less nine times in a one page letter.

### E.     Aetna's Disclosure Harmed A Population Subject To Pervasive Discrimination

31.     Aetna's conduct is especially egregious in this instance because it was directed at a

class of individuals historically subject to discrimination based upon their medical conditions.

Although many would like to believe a lot has changed since the U.S. Supreme Court held in

1998 that HIV/AIDS was subject to protections of the Americans with Disabilities Act[6], persons

living with HIV and those at high risk of infection continue to battle for equal access to healthcare

and rights.

---

[4] https://www.bloomberg.com/news/articles/2017-08-17/how-a-blue-pill-is-stopping-hiv-from-sydney-to-san-francisco, last accessed August 31, 2017.

[5] http://www.nytimes.com/2011/09/23/us/off-label-use-of-hiv-medications-is-catalyst-for-more-controversy.html?mcubz=3, last accessed August 31, 2017.

[6] *Bragdon v. Abbott*, 524 U.S. 624 (1988).

32.     In a 2009 survey by Lambda Legal, "nearly 63% of the respondents who had HIV reported experiencing one or more of the following types of discrimination in health care: being refused needed care; being blamed for their healthcare status; and/or a healthcare professional refusing to touch them or using excessive precautions, using harsh or abusive language, or being physically rough and abusive."[7]  Of those surveyed, 19% reported being denied care altogether. As Aetna pointed out on its own website, if patients can't trust their physicians and insurers to protect their health information they will be less likely to seek important and potentially life saving medical treatment.

33.     Persons living with HIV (and their families) are also regularly subjected to employment and housing discrimination.  In the 2000s, the U.S. Equal Employment Opportunity Commission received 2,175 complaints of discrimination based on HIV, with complaints peaking in the last year of the survey, demonstrating a disturbing upward trend.  And, a 2009 national survey conducted by the Kaiser Foundation also showed that only 21% of people were comfortable living with someone with HIV.  There are also numerous reported lawsuits over instances in which individuals with HIV (including children) have been denied housing and equal access because of their HIV status.

34.     It is also well known that HIV and AIDS disproportionately impacts historically disadvantaged groups such as the LGBT community and racial minorities.  According to AmFAR, gay and bisexual men accounted for 82% of the United States' 1.2 million people living with HIV, with African-Americans accounting for 45% of HIV diagnoses but only 12% of the general population.[8]

35.     The pervasive discrimination suffered by those with HIV or AIDS leads to a social stigma that results in significant harm, including a direct correlation to higher rates of depression,

---

[7] https://www.lambdalegal.org/sites/default/files/publications/downloads/fs_hiv-stigma-and-discrimination-in-the-us_1.pdf, last accessed August 31, 2017.  All statistics cited herein are taken from Lambda's report unless otherwise attributed.

[8] http://amfar.org/About-HIV-and-AIDS/Facts-and-Stats/Statistics--United-States/, last accessed August 31, 2017.

loneliness, and social isolation—and results in those suffering from (or at high risk of) the illness to avoid testing and treatment to avoid the negative consequences of a positive diagnoses.

### F.    Aetna Had A Duty To Prevent The Disclosure

36.    Aetna is and remains under a duty to Plaintiff and Class Members to maintain the security and integrity of their PII and PHI.  Aetna's disclosure was a direct and proximate result of Aetna's failure to implement and maintain appropriate and reasonable patient privacy procedures and practices to safeguard and protect Plaintiff's and Class Members' (as defined below) PII and PHI from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and its agreements with patients.

37.    At all times relevant herein, Aetna also had a duty to disclose the true facts about its substandard patient privacy practices, as alleged herein.  Aetna has a duty to disclose because it is in a superior position to know the true character and quality of its privacy practices and these facts are not something that Plaintiff and putative Class Members could have discovered independently prior to purchase or obtaining health insurance and medical services from their physicians and Aetna.  As a result of Aetna's material omissions about its substandard patient privacy practices, it has been able to procure business from patients who may have otherwise selected privacy compliant health insurers, or paid less for Aetna's medical services.  Aetna's substandard privacy, data and cybersecurity practices were material facts actively concealed and/or not disclosed to Plaintiff and the Class Members that a reasonable person would have considered important in deciding whether or not to obtain health insurance and medical services (or pay the same price for) Aetna's services.

38.    Aetna intentionally concealed and/or failed to disclose to consumers its substandard privacy practices as described in this Complaint for the purpose of inducing Plaintiff and putative Class Members to act thereon.  Plaintiff and the putative Class Members justifiably acted upon, or relied upon to their detriment, the concealed and/or non-disclosed material facts as evidenced by their obtaining medical services and treatment from Aetna.  Had Plaintiff known of the true character and quality of Aetna's substandard privacy practices, Plaintiff and the putative

1  Class Members would not have purchased (or would have paid less for) Aetna's medical services
2  and treatment.

3       39.     Aetna disregarded and violated Plaintiff's and Class Members' privacy rights, and
4  materially harmed them in the process, by not obtaining Plaintiff's and Class Members' prior
5  written consent to disclose their PII and PHI to any other person—as required by HIPAA and
6  other pertinent laws, regulations, industry standards, and internal company policies.

7       40.     Aetna flagrantly disregarded and violated Plaintiff's and Class Members' privacy
8  rights, and materially harmed them in the process, by failing to establish and implement
9  appropriate administrative, technical, and physical safeguards to ensure the security and
10  confidentiality of Plaintiff's and Class Members' PII and PHI, and to protect against reasonably
11  foreseeable disclosures of such information through reckless mass mailings.  Aetna's conduct has
12  forever compromised Plaintiff's and Class Member's PII and PHI, including particularly sensitive
13  information about treatment for stigmatized illnesses such as HIV.

14       41.     Aetna's wrongful actions and inaction directly and proximately caused the
15  dissemination into the public domain of Plaintiff's and Class Members' PII and PHI without their
16  knowledge, authorization, and consent.  As a direct and proximate result of Aetna's wrongful
17  actions and inactions and the resulting disclosure, Plaintiff and Class Members have suffered, and
18  will continue to suffer, economic damages and other actual harm including, without limitation:
19  (i) improper disclosure of their PII and PHI, including their HIV status and/or their use of HIV-
20  related medications for preventative measures; (ii) loss of privacy; (iii) out-of-pocket expenses
21  reasonably incurred to remedy or mitigate the effects of the disclosure; (iv) the value of their time
22  reasonably spent mitigating the effects of the disclosure; (v) the payments (or some portion
23  thereof) for medical insurance, services and treatment paid to the Defendants; (vi) mental,
24  emotional, and physical distress and anguish; and/or (vii) rights they possess under medical
25  privacy and consumer protection statutes—for which they are entitled to compensation.

26       42.     As a direct and proximate cause of Aetna's misconduct, Plaintiff and the putative
27  Class Members have suffered actual damages, Aetna has been unjustly enriched, and Plaintiff and

28

Class Members are entitled to appropriate relief.  Aetna's conduct has been and is malicious, wanton and/or reckless and/or shows a reckless indifference to the interests and rights of others.

**V.     PLAINTIFF'S EXPERIENCE**

43.     Plaintiff is a resident of San Francisco, California.  Plaintiff was enrolled in and paid for medical insurance services from Aetna.  Plaintiff's family received the July 2017 Notice and quickly contacted Plaintiff about their concerns regarding the information that was clearly visible though the transparent envelope.  Plaintiff, who is taking preventative HIV-related medications, had not disclosed this information to Plaintiff's family because the information was highly sensitive, personal, and private, particularly given that it revealed information about Plaintiff's sexuality.  Immediately, Plaintiff was concerned the letter was intended to inform him that he was in fact HIV positive or that he had been exposed to HIV via a partner while taking preventative medication.  Plaintiff's family was shocked and concerned for the health well-being of their child who they believed had contracted or was at high-risk of contracting a life-threatening illness.  By its disclosure, Aetna deprived Plaintiff the right to his medical privacy, and the ability to inform his parents of private information regarding his sexuality and health on his own terms in a manner that would not cause unnecessary stress or disruption.  As a result of Aetna's disclosure, Plaintiff had to disclose this information to his family.  Plaintiff's parents ultimately flew across the United States to ensure he was healthy and to assist him with dealing with the fall out of the notice, which has been highly disruptive to Plaintiff's life.

44.     As a direct and proximate result of Aetna's conduct, Plaintiff has suffered, and continues to suffer, ongoing harm, including the loss of his medical privacy, the disclosure of highly personal information, mental, emotional, and physical distress including panic, anxiety, loss of sleep, loss of productivity, and time spent dealing with the fallout of the disclosure. Moreover, Plaintiff remains in imminent threat of future harm from Aetna because Aetna continues to maintain his PII and PHI but is not safeguarding it from unlawful disclosure in compliance with state and federal laws.

1    **VI.    CLASS ACTION ALLEGATIONS**

2         45.    Plaintiff brings this suit as class action pursuant to Rule 23 of the Federal Rules of

3    Civil Procedure on behalf of himself and all members of the following Class:

4         All persons whose PII and/or PHI was compromised in the July
          2017 Notice(s) from Aetna regarding the options available to
5         Aetna's subscribers for obtaining "HIV Medications".

6         46.    Plaintiff also brings claims in this suit as class action pursuant to Rule 23 of the

7    Federal Rules of Civil Procedure on behalf of themselves and all members of the following

8    California Sub-class:

9         All persons in California whose PII and/or PHI was compromised
          in the July 2017 Notice(s) from Aetna regarding the options
10        available to Aetna's subscribers for obtaining "HIV Medications".

11        47.    Excluded from the Class and California Sub-class (collectively "Class" or

12   "Classes") are: (1) any Judge or Magistrate presiding over this action and members of their

13   families; (2) Aetna, Aetna's subsidiaries, parents, successors, predecessors, and any entity in

14   which Aetna has a controlling interest, and its current or former employees, officers, and

15   directors; (3) counsel for Plaintiff and Aetna (and employees of their firms); and (4) legal

16   representatives, successors, or assigns of any such excluded persons.

17        48.    The Classes meet all of the criteria required by Federal Civil Rule 23(a).

18        49.    **Numerosity**:  The Class Members are so numerous that joinder of all Members is

19   impracticable.  Though the exact number and identities of Class Members are unknown at this

20   time, but are reported to be approximately 12,000.  The identities of Class Members are

21   ascertainable through Defendants' records, Class Members' records, publication notice, self-

22   identification, and other means.

23        50.    **Commonality**: Common questions of law and fact exist as to all Class Members.

24   These common questions of law or fact predominate over any questions affecting only individual

25   Members of the Classes.  Common questions include, but are not limited to, the following:

26             a.    Whether Aetna violated state and federal laws by disclosing Plaintiff's and

27   Class Members' PII and PHI through the reckless July 2017 Notice;

28

b.      Whether Aetna violated state and federal laws by failing to properly store, secure, and dispose of Plaintiff's and Class Members' PII and PHI;

c.      Whether Aetna failed to employ reasonable and adequate medical privacy policies and practices in compliance with applicable state and federal regulations;

d.      Whether Aetna acted willfully, recklessly, or negligently with regard to maintaining the privacy of Plaintiff's and Class Members' PII and PHI;

e.      How the July 2017 Notice occurred;

f.      Whether Plaintiff and Class Members are entitled to restitution, damages, statutory damages, compensation, or other monetary relief; and

g.      Whether Plaintiff and Class Members are entitled to injunctive and declaratory relief necessary to secure their PII and PHI from further disclosure.

51.    Common sources of evidence may also be used to demonstrate Aetna's unlawful conduct on a class-wide basis, including, but not limited to documents and testimony about its medical privacy policies and practices (or lack thereof); documents and testimony about the source, cause, and purpose of the July 2017 Notice; and documents and testimony about any remedial efforts undertaken as a result of the unlawful disclosure of Plaintiff's and Class Members' PII and PHI.

52.    **Typicality**: Plaintiff's claims are typical of the claims of the respective Classes they seek to represent, in that the named Plaintiff and all Members of the proposed Classes have suffered similar injuries as a result of the same practices alleged herein.  Plaintiff has no interests adverse to the interests of the other Class Members.

53.    **Adequacy**:  Plaintiff will fairly and adequately protect the interests of the Classes, and has retained attorneys well experienced in class actions and complex litigation as their counsel, including cases alleging consumer protection and data privacy claims arising from medical data breaches.

54.    The Classes also satisfy the criteria for certification under Federal Civil Rules 23(b) and 23(c).  Among other things, Plaintiff avers that the prosecution of separate actions by the individual Class Members would create a risk of inconsistent or varying adjudication which

1  would establish incompatible standards of conduct for Aetna; that the prosecution of separate

2  actions by individual Class Members would create a risk of adjudications with respect to them

3  which would, as a practical matter, be dispositive of the interests of other Class Members not

4  parties to the adjudications, or substantially impair or impede their ability to protect their

5  interests; that Aetna has acted or refused to act on grounds that apply generally to the proposed

6  classes, thereby making final injunctive relief or declaratory relief described herein appropriate

7  with respect to the proposed classes as a whole; that questions of law or fact common to the

8  Classes predominate over any questions affecting only individual members and that class action

9  treatment is superior to other available methods for the fair and efficient adjudication of the

10  controversy which is the subject of this action.  Plaintiff also avers that certification of one or

11  more subclasses or issues may be appropriate for certification under Federal Civil Rule 23(c).

12  Plaintiff further states that the interests of judicial economy will be served by concentrating

13  litigation concerning these claims in this Court, and that the management of the Classes will not

14  be difficult.

15      55.    Plaintiff and other Class Members have suffered injury, harm, and damages as a

16  result of Aetna's unlawful and wrongful conduct.  Absent a class action, Aetna will continue to

17  maintain Class Members' PHI and PII that could be subject to future disclosures due to lax or

18  non-existent privacy policies and practices, and such unlawful and improper conduct should not

19  go remedied.  Absent a class action, the Class Members will not be able to effectively litigate

20  these claims and will suffer further harm and losses, as Aetna will be allowed to continue such

21  conduct with impunity and benefit from its unlawful conduct.

22  **VII.    CAUSES OF ACTION**

23              **FIRST CAUSE OF ACTION**
            **Willful Violation of the Fair Credit Reporting Act**
24                **15 U.S.C. §§ 1681-1681x**

25      56.    Plaintiff incorporates all preceding paragraphs as fully set forth herein.  Plaintiff's

26  FCRA claim is behalf of the Classes set forth above.

27

28

57.     One of the fundamental purposes of the FCRA is to protect consumers' privacy. 15 U.S.C. § 1681(a).  Protecting consumers' privacy involves adopting reasonable procedures to keep sensitive information confidential.  15 U.S.C. § 1681(b).

58.     The FCRA defines a "consumer reporting agency" as:

> [A]ny person, which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information or consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

59.     The FCRA defines a "consumer report" as:

> [A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under 15 U.S.C. § 16881(b).

60.     Aetna regularly assembles consumer information including, among other things, insurance policy information, such as names, dates of birth, type of loss, and amount paid for claims submitted by an insured; and a description of insured items.  Aetna also regularly utilizes interstate commerce to furnish such information on consumers to third parties.

61.     Plaintiff's and Class Members' PII and PHI constitute consumer reports under FCRA, because this information bears on, among other things, their credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, physical and mental medical conditions, and mode of living, and is used or collected, in whole or in part, for the purpose of establishing Plaintiff's and other Class Members' eligibility for insurance to be used primarily for personal, family, or household purposes, and establishing rates for same.

62.     The FCRA requires the adoption of reasonable procedures with regard to, *inter alia*, the confidentiality and proper utilization of personal and insurance information.  15 U.S.C. § 1681(b).  FCRA also requires that consumer reporting agencies "maintain reasonable

procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." 15 U.S.C. § 1681e.

63.     The FCRA defines "medical information" as:

> [I]nformation or data, whether oral or recorded, in any form or medium, created by or derived from a health care provider or the consumer, that relates to—(A) the past, present, or future physical, mental, or behavioral health or condition of an individual; (B) the provision of health care to an individual; or (C) the payment for the provision of health care to an individual.

15 U.S.C. § 1681a(i).

64.     FRCA specifically protects medical information; restricting its dissemination to limited instances. *See, e.g.*, 15 U.S.C. §§ 1681a(d)(3); 1681b(g); 1681c(a)(6).

65.     Plaintiff's and Class Members' PHI affected by the July 2017 Notice constitutes medical information as defined by FCRA.  Their PHI included diagnoses and treating information from medical professionals which relate to the provision of health care and past, present, or future physical, mental, or behavioral health or condition of an individual under FCRA's definition of medical information.  15 U.S.C. § 1681a(i).

66.     Under the FCRA, a "person that receives medication information shall not disclose such information to any other person, except as necessary to carry out the purpose for which the information was initially disclosed, or as otherwise permitted by statute, regulation, or order." 15 U.S.C. §§1681(g)(4), 1681b(g)(3)(A).

67.     Aetna's failure to adequately protect and safeguard Plaintiff's and Class Members' PII and PHI resulted in the disclosure of such information to one or more third-parties in violation of FCRA because such disclosure was not necessary to carry out the purposes for which Aetna received the information, nor was it permitted by statute, regulation or order.  Aetna's violations of the FCRA, as set forth above, were willful or, at the very least, reckless, constituting willfulness.

68.     As a direct and proximate result of Aetna's willful or reckless failure to adopt and maintain reasonable procedures to limit the furnishing and disclosures of Plaintiff's and Class Members' PII and PHI to the purposes listed in the statute, Plaintiff's and Class Members' PII

and PHI was disclosed and disseminated to unauthorized third-parties.  Plaintiff and Class

Members have suffered injury and harm, and will continue to suffer injury and harm because of

Aetna's conduct.

69.     As a further direct or proximate result of Aetna's willful or reckless FCRA

violations, as described above, Plaintiff and Class Members were (and continue to be) injured and

have suffered (and will continue to suffer) the harms and damages described in this Complaint.

70.     Accordingly, Plaintiff and Class Members are entitled to compensation for their

actual damages in an amount to be determined at trial or statutory damages of not less than $100,

and not more than $1,000, each, as well as attorneys' fees, punitive damages, litigation expenses

and costs, pursuant to 15 U.S.C. § 1681n(a).  Plaintiff also seeks injunctive relief enjoining the

above described wrongful acts and practices of Aetna and requiring Aetna to employ and

maintain industry accepted standards for medical privacy.

**SECOND CAUSE OF ACTION**
**Negligent Violation of the FCRA**

71.     Plaintiff realleges each and every allegation contained above, and incorporates by

reference all other paragraphs of this Complaint as if fully set forth herein.  Plaintiff brings this

claim on behalf of the Classes set forth above.

72.     Aetna negligently failed to adopt and maintain reasonable procedures designed to

limit the furnishing of consumer reports to the purposes listed under 15 U.S.C. § 1681b.

73.     Plaintiff's and Class Members' PII and PHI was wrongly disclosed and

disseminated to unauthorized third-parties and the public as a direct and foreseeable result of

Aetna's failure to adopt and maintain such reasonable procedures.

74.     Aetna disclosed medical information of Plaintiff's and Class Members to one or

more third-parties in violation of the FCRA because such disclosure was not necessary to carry

out the purpose for which Aetna received the information, nor was it permitted by statute,

regulation, or order.

75.     As a direct and proximate result of Aetna's negligent violations of the FCRA, as

described above, Plaintiff's and Class Members' PII and PHI was made accessible to

1    unauthorized third-parties in the public domain.  Plaintiff has suffered harm and injury, including

2    a loss of privacy, as a result of Aetna's negligent FCRA violations.

3          76.     As a further direct or proximate result of Aetna's negligent violations of the

4    FCRA, Plaintiff and Class Members were and continue to be injured and have suffered (and will

5    suffer) the damages and harms as they deal with the disclosure for the foreseeable future.

6    Accordingly, Plaintiff and Class Members are entitled to compensation for their actual damages,

7    as well as attorneys' fees, litigation expenses, and costs, pursuant to 15 U.S.C. § 1681o.  Plaintiff

8    also seeks injunctive relief enjoining the above described wrongful acts and practices of Aetna

9    and requiring Aetna to employ and maintain industry accepted standards for ensuring medical

10   privacy.

11                              **THIRD CAUSE OF ACTION**
                   **Violation of California Confidentiality in Medical Information Act**
12                              **Cal. Civ. Code §§ 56, *et seq.***

13         77.     Plaintiff realleges each and every allegation contained above, and incorporates by

14   reference all other paragraphs of this Complaint as if fully set forth herein.  Plaintiff brings this

15   claim on behalf of the Classes set forth above, or alternatively, on behalf of the California Sub-

16   class.

17         78.     This cause of action is brought pursuant to the California Confidentiality in

18   Medical Information Act ("CMIA"), Cal. Civ. Code. §§ 56, *et seq.*  At all times material herein

19   Aetna has been subject to the requirements of the CMIA.  The CMIA defines "medical

20   information" as "any individually identifiable information, in electronic or physical form, in

21   possession of or derived from a provider of health care, health care service plan, pharmaceutical

22   company, or contractor regarding a patient's medical history, mental or physical condition, or

23   treatment."  Cal. Civ. Code § 56.05.

24         79.     The CMIA requires that, except in limited circumstances expressed in the statute,

25   prior to disclosing a patient's confidential medical information Aetna must obtain each patient's

26   written authorization.  Cal. Civ. Code § 56.11.  Aetna did not obtain Plaintiff's or Class

27   Members' express written consent in the statutorily mandated form before disclosing their

28   medical information in the July 2017 Notice.  Aetna's disclosure also was not permitted under

1   any of the permissive or mandatory exceptions set forth in the CMIA.  Cal. Civ. Code § 56.10.

2   Aetna is also liable for any further disclosures of Plaintiff's and Class Members' medical

3   information that was a result of the July 2017 Notice.  Cal. Civ. Code §§ 56.13-14.

4         80.     The CMIA also prohibits the negligent creation, maintenance, preservation,

5   storage, abandonment, destruction, or disposal of confidential medical information.  Cal. Civ.

6   Code § 56.101.  Aetna has violated the CMIA by negligently creating, maintaining, preserving,

7   storing, abandoning, destroying, or disposing of Plaintiff's and Class Members' medical

8   information.  Aetna's negligent acts and omissions caused Plaintiff's and Class Members'

9   confidential medical information to be released in the July 2017 Notice.

10         81.     As a direct and proximate result of Aetna's conduct, Plaintiff and Class Members

11   are entitled to compensatory damages, punitive damages, and nominal damages of one-thousand

12   dollars ($1,000) for each of Aetna's violations of the CMIA, as well as attorneys' fees and costs

13   of suit.  Cal. Civ. Code. § 56.35-36.  Plaintiff and Class Members are also entitled to all necessary

14   injunctive and declaratory relief necessary to bring Aetna's medical privacy practices into

15   compliance with the CMIA to prevent further unauthorized uses and disclosures of their

16   confidential medical information.

17
18
**FOURTH CAUSE OF ACTION**
**Violation of California's HIV Disclosure Laws**
**Cal. Health & Safety Code**

19         82.     Plaintiff realleges each and every allegation contained above, and incorporates by

20   reference all other paragraphs of this Complaint as if fully set forth herein.  Plaintiff brings this

21   claim on behalf of the Classes set forth above, or alternatively, on behalf of the California Sub-

22   class.

23         83.     Among other things, California's Health & Safety Code prohibits the disclosure of

24   HIV related information, including a patient's HIV status and test results.  Cal. Health & Safety

25   Code § 120980.  Prior to disclosing Plaintiff's and Class Members' HIV-related health

26   information in the July 2017 Notice, Aetna did not obtain any express written consent required by

27   the statute.  *Id.*  Aetna's disclosure of its patients' HIV status, test results, and treatment along

28

1    with their personal identifying characteristics, is a negligent, willful, and malicious violation of

2    the Health & Safety Code section 120980.

3          84.    As a direct and proximate result of Aetna's conduct, Plaintiff and Class Members

4    have had their HIV related medical information, HIV status, and test results disclosed to third-

5    parties without their express written authorization and have suffered damages as described in this

6    Complaint.  Accordingly, Aetna is liable for "all actual damages, including damages for

7    economic, bodily, or psychological harm."  Cal. Health & Safety Code § 120980(d).

8    Additionally, Aetna is liable for civil penalties, fines, costs and attorneys' fees as permitted under

9    the statute.

10                        **FIFTH CAUSE OF ACTION**
                **Violation of Constitutional Right to Privacy**
11                  **California Constitution, Art. 1, § 1**

12         85.    Plaintiff realleges each and every allegation contained above, and incorporates by

13   reference all other paragraphs of this Complaint as if fully set forth herein.  Plaintiff brings this

14   claim on behalf of the Classes set forth above, or alternatively, on behalf of the California Sub-

15   class.

16         86.    Plaintiff and Class Members have a constitutionally protected privacy interest in

17   their confidential medical information.

18         87.    Plaintiff and Class Members have a reasonable expectation of privacy in their

19   confidential medical information.

20         88.    Aetna violated that constitutionally protected right to privacy by disclosing

21   Plaintiff's and Class Members' confidential medical information to third-parties via the July 2017

22   Notices.

23         89.    As a result of Aetna's unlawful conduct alleged herein, the privacy rights of

24   Plaintiff and Class Members have been violated, and Plaintiff and Class Members have been

25   harmed as a result thereof.  Accordingly, Plaintiff and Class Members are entitled to

26   compensatory and punitive damages, attorneys' fees.

27

28

**SIXTH CAUSE OF ACTION**
**Negligence**

90.     Plaintiff realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.  Plaintiff brings this claim on behalf of the Classes set forth above, or alternatively, on behalf of the California Sub-class.

91.     Aetna had a duty to exercise reasonable care and protect and secure Plaintiff's and Class Members' PII and PHI.

92.     Through its acts and omissions, Aetna violated its duty to use reasonable care to protect and secure Plaintiff's and Class Members' PII and PHI by employing substandard or non-existent medical privacy practices.

93.     It was reasonably foreseeable, particularly given legal mandates governing health data protection and the growing number of data breaches of health information, that the failure to reasonably protect and secure Plaintiff's and Class Members' PII and PHI would result in the disclosure of Plaintiff's and Class Members' PII and PHI in the July 2017 Notice.

94.     Plaintiff's and Class Members' PII and PHI constitute personal property that was negligently disclosed due to Aetna's negligence, resulting in harm, injury and damages to Plaintiff and Class Members.

95.     Aetna's negligence directly and proximately caused the unauthorized access and disclosure of Plaintiff's and Class Members' PII and PHI and Plaintiff and Class Members have suffered and will continue to suffer damages as a result of Aetna's conduct.  Plaintiff and Class Members seek damages and other relief as a result of Aetna's negligence.

**SEVENTH CAUSE OF ACTION**
**Negligence *Per Se***

96.     Plaintiff realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.  Plaintiff brings this claim on behalf of the Classes set forth above, or alternatively, on behalf of the California Sub-class.

97.     Pursuant to, *inter alia*, the FCRA, HIPAA (42 U.S.C. § 1302d *et seq.*), the FTCA, the GLBA, and California law (Civ. Code §§ 56, *et seq.*, Health & Safety Code § 120980, Cal. Const. Art. I, Sec. 1.), Aetna was required by law to maintain adequate and reasonable data and measures to maintain the security and privacy of Plaintiff's and Class Members' PII and PHI.

98.     Aetna breached its duties by failing to employ industry standard medical privacy practices to gain compliance with those laws.

99.     It was reasonably foreseeable that the failure to reasonably protect and secure Plaintiff's and Class Members' PII and PHI in compliance with applicable laws would result in an unauthorized third-parties obtaining Plaintiff's and Class Members' PII and PHI via the July 2017 Notice.

100.    Plaintiff's and Class Members' PII and PHI constitute personal property that was stolen and disclosed due to Aetna's negligence, resulting in harm, injury and damages to Plaintiff and Class Members.

101.    Aetna's conduct in violation of applicable laws directly and proximately caused the unauthorized access and disclosure of Plaintiff's and Class Members' PII and PHI and Plaintiff and Class Members have suffered and will continue to suffer damages as a result of Aetna's conduct.  Plaintiff and Class Members seek damages and other relief as a result of Aetna's negligence.

**EIGHTH CAUSE OF ACTION**
**Breach of Contract**

102.    Plaintiff realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.  Plaintiff brings this claim on behalf of the Classes set forth above, or alternatively, on behalf of the California Sub-class.

103.    Aetna provides medical services to Plaintiff and Class Members pursuant to the terms of its contracts, insurance agreements, and privacy policies, which all were a party to.  As consideration, Plaintiff and Class Members paid money to Aetna and/or their insurers for medical services.  Accordingly, Plaintiff and Class Members paid Aetna to properly maintain and store

their PII and PHI and not disclose it to unauthorized third-parties. Aetna violated its contracts by failing to employ reasonable and adequate privacy practices and measures that led to the disclosure of Plaintiff's and Class Members' PII and PHI for purposes not required or permitted under the contracts.

104. Plaintiff and Class Members have been damaged by Aetna's conduct, including by paying for medical privacy services that they did not receive, as well as by incurring the harms and injuries arising from the July 2017 Notice now and in the future.

**NINTH CAUSE OF ACTION**
**Invasion of Privacy**

105. Plaintiff realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein. Plaintiff brings this claim on behalf of the Classes set forth above, or alternatively, on behalf of the California Sub-class.

106. Plaintiff and Class Members maintain a privacy interest in their PII and PHI, which is private, confidential information that is also protected from disclosure by applicable laws as set forth above.

107. Aetna's disclosure of Plaintiff's and Class Members' PII and PHI to unauthorized third-parties as a result of its failure to adequately secure and safeguard their PII and PHI is offensive to a reasonable person. Aetna's disclosure of Plaintiff's and Class Members' PII and PHI to unauthorized third-parties permitted the disclosure of Plaintiff's and Class Members' private quarters where their PII and PHI was stored, and disclosed private facts about their health into the public domain.

108. Plaintiff and Class Members have been damaged by Aetna's conduct, including by paying for medical privacy practices that they did not receive, as well as by incurring the harms and injuries arising from the July 2017 Notice now and in the future.

**TENTH CAUSE OF ACTION**
**Intentional Infliction of Emotional Distress**

109.    Plaintiff realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.  Plaintiff brings this claim on behalf of the Classes set forth above, or alternatively, on behalf of the California Sub-class.

110.    Aetna's knowing and intentional disclosure via the July 2017 Notice of Plaintiff's and Class Members' treatment for HIV and HIV prevention was extreme and outrageous conduct made with the intention or causing, or with reckless disregard of the probability of causing emotional distress.  As it is well known and set forth in this Complaint, those persons suffering from and at high-risk of contracting HIV are stigmatized and regularly discriminated against such that the disclosure of their HIV status or seeking of treatment of HIV is perhaps the most harmful disclosure Aetna could make about it patients, and it did so in a reckless fashion.  Moreover, numerous state and federal laws as set forth herein further demonstrate the necessity of confidential medical information being protected, and even more specifically so for information regarding HIV testing and treatment.

111.    As a direct and proximate cause of Aetna's conduct alleged herein regarding the July 2017 Notice, Plaintiff and Class Members have suffered severe or extreme emotional distress and other damages due to the release of their confidential medical information to third-parties.

112.    Accordingly, Aetna is liable to Plaintiff and Class Members for all actual compensatory damages, punitive damages, and all attorneys' fees and costs of suit.

**ELEVENTH CAUSE OF ACTION**
**Unlawful, Unfair and Fraudulent Business Acts and Practices**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

113.    Plaintiff realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.  Plaintiff brings this claim on behalf of the Classes set forth above, or alternatively, on behalf of the California Sub-class.

114.    Aetna's acts and omissions as set forth in this Complaint constitute unlawful, unfair, and fraudulent business practices in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et. seq.*

115.    Aetna engaged in unlawful business practices as set forth in this Complaint, including via its violations of, *inter alia*, the FCRA, HIPAA (42 U.S.C. § 1302d *et seq*.), the FTCA, the GLBA, and California law (Civ. Code §§ 56, *et seq*., Health & Safety Code § 120980, Cal. Const. Art. I, Sec. 1.).  Aetna further violated the UCL as set forth in this Complaint through its unlawful negligent conduct, its intentional and reckless infliction of emotional distress, and its breach of contracts with Plaintiff and Class Members.

116.    Aetna also engaged in unfair business practices in violation of the UCL as set forth in this Complaint because the utility of its conduct as described in this Complaint is outweighed by the gravity of the consequences to Plaintiff and Class Members and because Aetna's conduct as described in this Complaint is immoral, unethical, oppressive, unscrupulous or substantially injurious to Plaintiff and Class Members.

117.    Aetna has also engaged in fraudulent business practices under the UCL by failing to disclose its substandard medical privacy practices in order to procure the purchase of health insurance services from Aetna by Plaintiff and Class Members.  Had Plaintiff and Class Members known Aetna would not respect their medical privacy they would not have purchased health care from Aetna or would have paid less for Aetna's services.

118.    Plaintiff, on behalf of himself and Class Members, has suffered injury as a direct and proximate result of Aetna's fraudulent, unlawful and unfair business practices and is therefore entitled to equitable relief, including restitution, disgorgement of profits Aetna obtained from its fraudulent, unlawful and unfair business practices, and a permanent injunction that enjoins Aetna from the unlawful practices described herein, as well as attorneys' fees and costs of suit.  Cal. Bus. & Prof. Code § 17203.

1

**TWELFTH CAUSE OF ACTION**
**Unjust Enrichment**

2     119.    Plaintiff realleges each and every allegation contained above, and incorporates by

3     reference all other paragraphs of this Complaint as if fully set forth herein.  Plaintiff brings this

4     claim on behalf of the Classes set forth above, or alternatively, on behalf of the California Sub-

5     class.

6     120.    Plaintiff and Class Members conferred a benefit on Aetna by paying for medical

7     privacy practices they did not receive.

8     121.    Aetna has retained the benefits of its unlawful conduct including the amounts

9     received for medical privacy practices that it did not provide.  Due to Aetna's conduct alleged

10    herein, it would be unjust and inequitable under the circumstances for Aetna to be permitted to

11    retain the benefit of its wrongful conduct.

12    122.    Plaintiff and the Class Members are entitled to full refunds, restitution and/or

13    damages from Aetna and/or an order of this Court proportionally disgorging all profits, benefits,

14    and other compensation obtained by Aetna from its wrongful conduct.  If necessary, the

15    establishment of a constructive trust from which the Plaintiff and Class Members may seek

16    restitution or compensation may be created.

17    123.    Additionally, Plaintiff and the California Sub-class Members may not have an

18    adequate remedy at law against Aetna, and accordingly plead this claim for unjust enrichment in

19    addition to or, in the alternative to, other claims pleaded herein.

20

**THIRTEENTH CAUSE OF ACTION**
**Declaratory Relief**
**28 U.S.C. § 2201**

21

22    124.    Plaintiff realleges each and every allegation contained above, and incorporates by

23    reference all other paragraphs of this Complaint as if fully set forth herein.  Plaintiff brings this

24    claim on behalf of the Classes set forth above.

25    125.    An actual controversy has arisen and now exists between Plaintiff and the putative

26    Classes on the one hand, and Aetna on the other, concerning Aetna's failure to protect Plaintiff's

27    and Class Members' PII and PHI in accordance with applicable state and federal regulations and

28    the agreements between the parties.  Plaintiff and the Class Members contend that Aetna failed to

maintain adequate and reasonable privacy practices to protect their PII and PHI while on the other hand, Aetna contends it has complied with applicable state and federal regulations and its agreements with Plaintiff and Class Members to protect their PII and PHI.

126.    Accordingly, Plaintiff and Class Members entitled to and seek a judicial determination of whether Aetna has performed, and is performing, its medical privacy practices and obligations necessary to protect and safeguard Plaintiff's and Class Members' PII and PHI from further unauthorized, access, use, and disclosure, or insecure disposal.

127.    A judicial determination of the rights and responsibilities of the parties over Aetna's medical privacy practices is necessary and appropriate at this time so that: (1) that the rights of the Plaintiff and the Classes may be determined with certainty for purposes of resolving this action; and (2) so that the Parties will have an understanding of Aetna's obligations in the future given its continuing legal obligations and ongoing relationships with Plaintiff and Class Members.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff on his own and behalf of all others similarly situated, prays for relief as follows:

A.    For an Order certifying this case as a class action pursuant to Federal Civil Rule 23, appointing Plaintiff as Class Representative, and the undersigned as Class Counsel;

B.    Awarding monetary, punitive and actual damages and/or restitution, as appropriate;

C.    Awarding declaratory and injunctive relief as permitted by law or equity to assure that the Class and California Sub-class has an effective remedy, including enjoining Aetna from continuing the unlawful practices as set forth above;

D.    Prejudgment interest to the extent allowed by the law;

E.    Awarding all costs, experts' fees and attorneys' fees, expenses and costs of prosecuting this action; and

F.    Such other and further relief as the Court may deem just and proper.

IX.     **JURY TRIAL DEMAND**

Plaintiff requests a trial by jury on behalf of himself and all similarly-situated persons pursuant to Federal Rule of Civil Procedure 38.

Respectfully submitted,

DATED:  September 7, 2017     **KAPLAN FOX & KILSHEIMER LLP**

By:   /s *Laurence D. King*
                Laurence D. King

Laurence D. King (SBN 206423)
Linda M. Fong (SBN 124232)
Matthew B. George (SBN 239322)
Mario M. Choi (SBN 243409)
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  415-772-4700
Facsimile:   415-772-4707
lking@kaplanfox.com
lfong@kaplanfox.com
mgeorge@kaplanfox.com
mchoi@kaplanfox.com

*Counsel for Plaintiff John Doe*

CLASS ACTION COMPLAINT